IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN A. EPSTEIN, | ) | |
| | ) | C.A. No. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | TRIAL BY JURY OF TWELVE |
| BOARD OF EDUCATION OF | ) | DEMANDED |
| THE MILFORD SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

1. Plaintiff John Epstein ("Plaintiff") brings this action under the Americans with Disabilities Act against his former employer, the Board of Education of the Milford School District ("Milford") for failing to provide reasonable accommodation when a chronic medical condition deprived him of his ability to walk and required his use of a wheelchair for mobility. The two-story school building does not have an elevator, and Plaintiff was therefore unable to attend or monitor classes and student activity in a large physical space in the school. Further, staff and administrators displayed a callous lack of regard for Plaintiff's rights under the ADA and forced him to take disability leave when reasonable accommodations existed and were afforded to others similarly situated.

## JURISDICTION AND VENUE

2. Complaint is brought pursuant to ADA Title 42 U.S.C. §1211(a) (2012) and FMLA U.S.C. § 2601 *et. seq.* (2012).

3. This Court has subject matter jurisdiction over all federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court because all relevant conduct occurred in the State of Delaware, and, upon information and belief, all Defendants reside within the District.

## THE PARTIES

5. Plaintiff is a Delaware resident currently residing in Lewes, Delaware with his wife and three grown children. Plaintiff has been a teacher for 11 years. Plaintiff began working at Defendant Milford High School in August 2017. Plaintiff currently works at The Bancroft School. Plaintiff's salary at Milford High School was $80,000.

6. Defendant Milford is the legal entity capable of answering for this lawsuit, which concerns activities and participants centered around Milford High School in Milford, Delaware.

## ADMINISTRATIVE PROCEEDINGS

7. Plaintiff timely filed a Charge of Discrimination alleging violations of the Americans with Disabilities Act to the Equal Opportunity Commission ("EEOC") on August 13, 2018.

8. Milford filed a Position Statement on September 13, 2018, in which it argues that Plaintiff voluntarily resigned his position at the close of the 2017/2018 school year. Further, it argues that there were no reasonable accommodations for Plaintiff.

9. Milford refused to participate in mediation or conciliation and the EEOC issued its right to sue letter on February 21, 2021.

## FACTS

10. Plaintiff John Epstein, Ed.D., has been an educator for over twenty years.

11. Plaintiff was recruited by the Rodel Foundation to work for the Milford School District in or around 2017.

12. Plaintiff's contract to work through the Rodel Foundation fell through. Nevertheless, Plaintiff had moved from Hawaii with his family to Delaware seeking a position here.

13. Plaintiff was one of several educators who was recruited through the Rodel Foundation. One such educator, Shawn Snyder, was able to find alternative placement when his contract similarly fell through as principal of Milford High School.

14. The principal recruited Plaintiff to work as an Assistant Principal at Milford High School.

15. Plaintiff's teaching career has spanned all ages of elementary and high school education. His primary focus as an educator has been in math and STEM subjects.

16. In Fall 2017, Plaintiff's employment at Milford High School commenced.

17. In October and November 2017, Plaintiff began to experience symptoms that effected his mobility. For example, he experienced increased difficulty walking, standing, climbing stairs, and, in order to walk, often required the use of supports (leaning on walls, use of rolling carts, etc.).

18. Plaintiff sought treatment through a neurologist in December 2017, who advised that Plaintiff should obtain a wheelchair and restrict his climbing of stairs.

19. Plaintiff began to use a wheelchair in order to move throughout his place of employment after returning to work following the Christmas and new year 2017-2018 break.

20. In January 2018, Plaintiff was assigned to activities as Assistant Principal that required him to attend meetings on the second floor of the building. Milford High School does not have elevators.

21. In February 2018, Plaintiff was evaluated by the Easterseals who deemed him eligible, because of the medical necessity, to receive a powered wheelchair.  The powered wheelchair enabled Plaintiff to move about without manually rotating the wheels of his mobility aid, however, it did not resolve the issue of needing to travel to the second floor for his routine duties.

22. Because it was a rapidly evolving medical situation, Plaintiff did not know when or if his mobility issues would resolve themselves.  He was undergoing diagnostic tests through various specialists at this time and sought above all things to maintain some normalcy at work.

23. Plaintiff began to be treated differently in the Spring semester of the 2017/2018 school year.  He sensed that attitudes among faculty were uncomfortable with his apparent new disability.

24. Plaintiff sought not to be treated differently, and specifically requested that tables, chairs, and other furniture not be moved to clear a path for him in such a manner to disrupt or make obvious his new medical condition.

25. On one occasion, after Plaintiff expressly asked them not to do so, administrators at Milford High School moved around the furniture in his office in what they perceived to be assisting him with his movement around furniture considering his powerchair.  This was not at all helpful and in fact was quite embarrassing.

26. At Milford High School, if students experience mobility-related disability, their classes are routinely moved for their purposes to the first floor so as not to require the student to maneuver stairs.

27. This accommodation was not feasible for Plaintiff, and he did not press the issue.  Rather, Plaintiff focused himself on what he could accomplish in his ordinary activities as Assistant

Principal that semester. Meanwhile, in his free time, he was working hard to obtain a diagnosis that would hopefully restore his mobility.

28. Toward the end of the 2017/2018 school year, when students departed for the summer, other administrators, like Plaintiff, would ordinarily continue at least some office duties throughout the summer holiday. In this case, FMLA leave was sought and granted specifically to attend to the mobility issue that Plaintiff's doctors were trying to diagnose.

29. When the students packed up for the summer, Plaintiff also packed up his office. He said the usual good-byes to staff and students alike. He did not, at any time, tell anyone he was quitting.

30. At all times relevant to this Complaint, Plaintiff made clear that he wished to remain employed with Milford School District.

31. It became clear, at some point, to Plaintiff, that working at Milford High School was especially challenging because of the physical layout of the school. Namely, because the second floor was inaccessible except by staircase, it was unlikely that while his mobility issues persisted, Plaintiff would ever be able to engage in the routine activities incumbent upon him as Assistant. Principal on the second floor.

32. Given the number of facilities and number of teachers in the state of Delaware's employment, Plaintiff thought that the best course would be to pursue a transfer to a facility that was more handicapped accessible.

33. Plaintiff made several attempts to seek out an appropriate transfer for which he was well-suited based on his background and expertise and for which the school district had needs.

34. During his FMLA leave in summer 2018, Plaintiff became aware of an opening at another school in the Milford School District. He sought out further information given his concerns that his medical condition was not improving despite the aggressive treatment.

35. When Plaintiff sought leave to apply for the new position, he was advised by Human Resources Director, Jason Peel, and Superintendent, Kevin Dickerson, that a transfer was impossible.

36. Plaintiff knew that others similarly situated had been transferred freely and was surprised to learn this would be a problem.

37. Not only did the school district advise Plaintiff that he was ineligible for transfer, but the school district also informed Plaintiff that his position at Milford High School was no longer being held for him.

38. This was surprising and disheartening news to Plaintiff. He attempted to explain that he was still undergoing treatment and believed that he might be able to make a meaningful recovery in time to return to school by the time of his FMLA leave on September 4, 2018.

39. Plaintiff relied on the representations by Milford School District that he was eligible for and was being granted the benefits of FMLA leave through and until September 4, 2018.

40. When it became clear in July and August 2018 that Plaintiff's job was no longer safe, he became concerned. He believed that the reason for the change in his job status was solely the basis of his disability.

41. Plaintiff filed a complaint with EEOC on August 13, 2018.

42. In his Charge of Discrimination, Plaintiff raised his concerns that he was being forced to be placed on "long-term disability leave" notwithstanding the fact that he was physically and otherwise able to carry out the necessary functions of his position.

43. The mere fact that Plaintiff sought information on a potential accommodation (a transfer to a handicapped accessible school) was the motivation behind the school district's decision to deny him a position for the 2018-2019 school year.

44. During the 2018-2019 school year, Plaintiff was out on disability leave.  He received benefits in the amount of roughly sixty percent of his otherwise $80,000 per year salary.

45. During the school year in which Plaintiff was without work and receiving long-term disability benefits, he began to seek other work because he had believed he had been terminated from Milford School District.

46. During this time, Plaintiff was pursuing his complaint through EEOC *pro se*.

47. Plaintiff eventually obtained a position in or around fall 2019 at Wagner College, a school in Staten Island, New York, where he served as an Assistant Professor.

48. Though obtaining this position mitigated his damages, the pay was substantially less than his salary in the Milford School District, nearer to his house.  The new position required Plaintiff to commute during weekdays to Staten Island, New York.

49. Plaintiff was able to manage the commute to Staten Island, stay in a hotel for a portion of the week, manage his own expenses and carry out his job duties at Wagner College notwithstanding his physical disability during the 2019-2020 school year.

50. At the conclusion of the 2019-2020 school year, Plaintiff was offered a position at the Christina School District.

51. Plaintiff accepted a position with Christina School District as a 6th grade Mathematics teacher where he remains employed to this day.

## COUNT I: VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA") 29 U.S.C. § 2601 *et. seq.* (2012) (RETALIATION).

1. All preceding paragraphs are fully incorporated herein.

2. Plaintiff invoked a right to FMLA Leave.

Defendant "from discriminated and retaliated against Plaintiff for having exercised or attempted to exercise FMLA rights.

3. Defendant used the taking of FMLA leave as a negative factor in employment actions it took and refused to take regarding material aspects of Plaintiff's employment.

4. Plaintiff suffered an adverse employment action. Plaintiff was forced to take long-term disability, resulting in a pay decrease. Plaintiff was refused the benefits of other full-time employees similarly situated; he was not allowed to return to work during the 2018 and 2019 school years, and these actions were causally connected to Plaintiff's invocation of rights under FMLA.

5. Defendants' actions constitute unlawful retaliation for the exercise of Plaintiff's rights under FMLA.

6. As a result of Defendant's conduct, Plaintiff suffered damages, including loss of earnings, salary, and benefits, diminished pay, loss of future earnings, pain, suffering, inconvenience, mental anguish, loss of enjoyment in life, and demands compensatory damages, back pay, front pay, attorney's fees, costs, all other appropriate forms of legal and equitable relief.

### COUNT II: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT UNDER TITLE 42 U.S.C. §1211(a) (2012) DISABILITY DISCRIMINATION (FAILURE TO ACCOMMODATE)

7. All preceding paragraphs are fully incorporated herein.

8. At all relevant times, Plaintiff was a disabled person within the meaning of the ADA.

9. Plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by his employer.

10. Plaintiff suffered an adverse employment action as a result of discrimination.

11. Defendant failed to make reasonable accommodations and failed to demonstrate that making such accommodation would impose undue hardship on the operation of the business.

12. As a result of Defendant's unlawful and discriminatory conduct, Plaintiff suffered damages, including loss of compensation, diminished pay, loss of future earnings, pain, suffering, inconvenience, mental anguish, loss of enjoyment in life, and demands compensatory damages, back pay, front pay, attorney's fees, costs, all other appropriate forms of legal and equitable relief.

### COUNT III: ADA RETALIATION

13. All preceding paragraphs are fully incorporated herein.

14. Defendant's actions constitute retaliation under ADA.

15. Plaintiff was a qualified individual who was denied employment on the basis of his disability, which required the use of mobility aids. Plaintiff's request for a transfer to a single-story school within the school district was met with a denial and termination.

16. As a result of Defendant's unlawful and discriminatory conduct, Plaintiff suffered damages, including loss of compensation, diminished pay, loss of future earnings, pain,

suffering, inconvenience, mental anguish, loss of enjoyment in life, and demands compensatory damages, back pay, front pay, attorney's fees, costs, all other appropriate forms of legal and equitable relief.

**WHEREFORE**, Plaintiff prays this Honorable Court will grant her relief in the form of these specific requests and any other such legal and equitable relief this Court deems appropriate and just.

Respectfully Submitted,

Kate Butler (Bar ID No. 6017)
Kate Butler Law LLC
1509 Gilpin Avenue, Suite 3
Wilmington, DE 19806
(302) 966-9994 (tel)
(302) 651-7960 (fax)
*Attorney for Plaintiff*

Date: May 27, 2021